UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRI L. FAUST,

        Plaintiff,

        v.                                                  **DECISION AND ORDER**
                                                                         18-CV-313S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Terri L. Faust brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff filed an application for DIB with the Social Security Administration ("SSA") on July 31, 2014. (R.[1] at 10, 123-29). Plaintiff alleged disability for the closed period beginning July 16, 2016, through February 23, 2016, due to type I juvenile diabetes, clinical depression, and anxiety disorder. (R. at 25, 150). Plaintiff's application was denied (R. at 56), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 64).

        3.        On February 8, 2017, ALJ Paul F. Kelly held a hearing at which Plaintiff—represented by counsel—and Vocational Expert ("VE") Cherie Plante appeared and testified. (R. at 22-48). At the time of the hearing, Plaintiff was 35 years old (R. at 147), with a 12th grade education and some college (R. at 151) and past work experience as a

---

[1] Citations to the underlying administrative record are designated as "R."

data entry clerk, tool and equipment rental clerk, and administrative clerk. (R. at 42-45, 151).

5. 4. The ALJ considered the case *de novo* and, on March 15, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 13-18). On January 5, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-6). Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on March 6, 2018. (Docket No. 1).

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 11). Plaintiff filed a response on November 25, 2018 (Docket No. 12), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than

---

[2] The ALJ's March 15, 2017 decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

2

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based

> solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 16, 2014, except that Plaintiff "worked after the alleged disability onset date from April 2015 to September 2015 […] with informal accommodations." (R. at 12). At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes, migraines, and gastroparesis. Id. At step three, the ALJ found that Plaintiff does not have

an impairment or combination of impairments that meets or medically equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except Plaintiff could "occasionally do all postural maneuvers with the exception that she can never climb ladders[,] ropes[,] or scaffolds." Id.

13. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a data entry clerk and tool rental clerk. (R. at 16). Although the ALJ found Plaintiff capable of performing past relevant work, analysis of Plaintiff's capabilities continued. Id.

14. Alternatively, at step five, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff is capable of performing. (R. at 17-18).

15. Accordingly, the ALJ found that Plaintiff was not disabled during the relevant period. (R. at 18).

16. Plaintiff argues that the Commissioner's denial of benefits is not supported by substantial evidence because (1) the ALJ relied only on his own lay opinion in determining the RFC; and (2) the ALJ failed to properly evaluate the opinion of a consultative psychiatric examiner. (Docket No. 9 at 15-24). For the reasons that follow, these arguments are unavailing.

17. Plaintiff first contends that "there is absolutely no opinion evidence in the record regarding Plaintiff's diabetes, migraines, or gastroparesis." (Docket No. 9 at 18). "As such," Plaintiff argues, "the ALJ had to rely upon his own lay opinion as to Plaintiff's

5

physical limitations caused by her diabetes, migraines, and gastroparesis in making his RFC assessment." Id. Plaintiff demands remand "so that an RFC based on legally required substantial evidence may be assessed and a disability determination based on such substantial evidence may be made." Id.

18. To be sure, generally, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dailey v. Astrue, 2010 U.S. Dist. LEXIS 122892, 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010) (internal quotation omitted), report and recommendation adopted, 2010 U.S. Dist. LEXIS 122893, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010).

19. However, the ALJ's opinion need "not perfectly correspond with any of the opinions of medical sources cited in his decision," and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (summary order); see also 20 C.F.R. § 404.1545(a)(3) ("[The ALJ] will assess your residual functional capacity based on all of the relevant medical and other evidence"). In doing so, "[t]he [ALJ] is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

20. Here, the ALJ discussed medical evidence and subjective reports related to Plaintiff's severe impairments as well as Plaintiff's reported activities during the alleged disability period. (R. at 12-16).

21. The ALJ noted that the medical record demonstrates that "routine treatment has generally been successful in controlling [Plaintiff's diabetes-related] symptoms" and

that Plaintiff's subjective reports also indicate that her diabetes was "well-controlled with diet and exercise." (R. at 15).

22. The ALJ's analysis of Plaintiff's diabetes is borne out by the record. Plaintiff saw her primary care physician, Dr. David Kowalski, on the alleged onset date, July 16, 2014. (R. at 210-12). Dr. Kowalski indicated Plaintiff's diabetes "has been well[-]controlled," with "[n]o medication side effects." Id. Similarly, on August 13 and October 8, 2014, Plaintiff's diabetes was assessed as "controlled." (R. at 255, 258).

23. On December 8, 2014, and February 3, 2015, Plaintiff's diabetes was still assessed as "controlled," and Plaintiff reported, "sugars have been great." (R. at 261, 264). On May 13, 2015, Dr. Kowalski noted that Plaintiff "has been doing well with sugars" (R. at 270), and on August 14, 2015, he indicated that Plaintiff's "glucose is fairly well-controlled" (R. at 273).

24. Next, the ALJ considered Plaintiff's migraines but noted that "[Plaintiff] denied ongoing symptoms" and that the neurological findings in the record were "unremarkable." (R. at 15). Plaintiff does not dispute the ALJ's reading of the record with respect to her diabetes and migraines, nor does she point to any evidence—medical opinion, subjective reports, or otherwise—that indicate these impairments cause any functional limitations.

25. The ALJ also discussed Plaintiff's gastroparesis, finding that Plaintiff has "issues with constipation, vomiting and nausea" that are related to "[her] food choices." (R. at 15). The ALJ noted this condition sent Plaintiff to the emergency room ("ER") in 2014, but that "[b]y March 2015, [Plaintiff's] symptoms stabilized with only occasional nausea, normal bowel movements and stable weight/appetite." Id.

7

26. Upon referral to gastroenterologist Mark St. Marie on February 11, 2015, Plaintiff reported "that she has episodes of nausea with vomiting about 4 times a week, but it depends on what she eats" and that her symptoms are exacerbated by fatty foods. (R. at 237). Dr. St. Marie ordered an upper GI endoscopy and advised Plaintiff to "eat small frequent meals to help decrease symptoms and take Zofran as needed for nausea." (R. at 239).

27. The endoscopy, performed February 24, 2015, revealed a small hiatal hernia and some mildly erythematous mucosa in the gastric antrum but was otherwise normal. (R. at 240). Plaintiff was advised to resume her previous diet and continue her medications. (R. at 241).

28. Dr. St. Marie saw Plaintiff for a follow-up on March 18, 2015, and reported that all biopsy results from the endoscopy were negative. (R. at 244-46). Plaintiff reported having "good days and bad days" with generally good appetite and stable weight, "very rare heartburn," and "occasional nausea especially early in the morning." (R. at 244). Dr. St. Marie advised Plaintiff "to follow a diet with small frequent meals," to "continue to use Zofran as needed for nausea," and "to resume [her] other medications, diet, and activities as before." (R. at 245-46).

29. On July 1, 2015, Plaintiff reported that "[h]er symptoms are usually well[-]controlled with her Zofran" although "[s]he has had some brief nausea and vomiting the last 2 days." (R. at 247). Dr. St. Marie advised Plaintiff — who had a good appetite and was "following frequent small meals" — "to resume [her] medications, diet and activities as before." (R. at 249).

30. The ALJ noted that Plaintiff's treatment "has been essentially routine and/or conservative in nature" and that her symptoms are managed with medication. (R. at 16). Nonetheless, "[i]n consideration of [Plaintiff's] gastroparesis including emergency room visit in 2014," the ALJ found Plaintiff to have a "reduced" RFC of "sedentary work exertional level." (R. at 15).

31. Despite this consideration of her impairments, Plaintiff charges that the ALJ "ignores the seriousness of Plaintiff's conditions, which led to multiple emergency room visits throughout the relevant period," generally citing 468 pages of medical records. (Docket No. 9 at 18, citing [R. at] 298-764). Of these 468 pages, 304 pages relate to inpatient treatment for pelvic abscesses (R. at 407-710) and another 24 pages relate to treatment for a sprained wrist (R. at 711-34). The remaining pages contain records of Plaintiff's October 18, 2014 ER visit —discussed and relied upon by the ALJ — as well as records from three ER visits in 2015. (R. at 298-406, 735-764).

32. The ER records indicate that Plaintiff presented to the emergency department on October 18, 2014, with nausea and vomiting. (R. at 299-338). Plaintiff reported that her symptoms are aggravated by food" and "alleviated by nothing." (R. at 305). Plaintiff was discharged in stable condition that same day with instructions to follow up with her private physician in 2-3 days to "[r]echeck today's complaints." Id. Plaintiff's discharge form included no other instructions, special notes, or restrictions. (R. at 324).

33. Stomach issues sent Plaintiff to the emergency room again on July 31, 2015 (R. at 339-74), August 14, 2015 (R. at 375-406), and December 29, 2015 (R. at 735-67). Each time, Plaintiff presented with complaints of nausea and vomiting (R. at 339, 375,

9

735) and was discharged in "stable" or "good" condition within six hours of arriving (R. at 340-41, 377, 735-38).

34. Signed discharge instructions dated July 31, 2015, lists diagnoses of dehydration, hypoglycemia, and gastroparesis, and directs Plaintiff to see Dr. Kowalski to "[r]echeck today's complaints." (R. at 363). The space for "special notes" contains the word "None." Id.

35. Discharge instructions dated December 29, 2015, direct Plaintiff to see Dr. St. Marie to recheck her complaints and again indicates there are no special notes or restrictions. (R. at 757). Similar discharge instructions are dated August 14, 2015, but the form is unsigned. (R. at 386).

36. Plaintiff testified that she worked 30-35 hours per week "from the end of April to the end of September" of 2015 as a tool rental clerk. (R. at 28-29). Plaintiff explained she left that job due to "severe issues with [her] health" including gastroparesis, diabetes, and a lacerated appendix. (R. at 28).

37. On October 1, 2015, Plaintiff saw her primary care physician for an apparent urinary tract infection ("UTI"). (R. at 276-77). Plaintiff was still feeling ill on October 5, 2015, complaining of shortness of breath and lower abdominal pain that had lasted for several days. (R. at 279).

38. Plaintiff returned to her primary care physician on October 7, 2015, presenting with persistent fever and abdominal pain despite antibiotics. (R. at 280). Dr. Kowalski sent her to the ER, and Plaintiff was found to have an abscess that required surgical intervention. (R. at 407-710). Plaintiff was hospitalized for a week, but there is no indication that this condition lasted or was expected to last for at least 12 months, nor

10

that the abscess was caused by her severe impairments of gastroparesis and diabetes. Id.

39. The ALJ found the lack of well-supported medical opinions "indicating that [Plaintiff] was disabled within the relevant period" to be evidence against a finding of disability. (R. at 16). The ALJ also noted that Plaintiff's daily activities were not so limited as to support her allegation of disability between July 16, 2014 and February 23, 2016.

40. At the hearing, Plaintiff's attorney stated that the record before the ALJ had been reviewed and there were no objections. (R. at 24). Now, however, Plaintiff complains that the record is insufficient to make any RFC determination and insists upon remand. (Docket No. 9 at 19). This argument fails.

41. As noted above, the burden of proof with respect to establishing RFC rests with the plaintiff. Dumas, 712 F.2d at 1553; see also 20 C.F.R. § 404.1560(c)(2). "Because Plaintiff bears the burden of proving her RFC, the ALJ could reasonably rely on the lack of evidence that Plaintiff was unable to perform a range of sedentary work." Ortiz v. Colvin, 2014 U.S. Dist. LEXIS 105191, *21, 2014 WL 3784108 (W.D.N.Y. 2014) (citing 20 C.F.R. § 404.1545(a)(3) (the claimant is responsible for providing the evidence used in the residual functional capacity determination)).

42. Here, nothing in the record indicates that Plaintiff's doctors ever restricted her ability to work or found functional limitations related to her gastroparesis, diabetes, or migraines inconsistent with the ability to perform sedentary work. This Court is satisfied that the ALJ did not substitute his lay opinion for those of Plaintiff's doctors, but rather, properly weighed the evidence as a whole when making the RFC determination.

43. Plaintiff next argues that the ALJ failed to properly evaluate the opinion of consultative psychiatric examiner, Dr. Ippolito. (Docket No. 9 at 20).

44. Dr. Ippolito examined Plaintiff on September 18, 2014. (R. at 225-29). Plaintiff reported having struggled with sad and depressed moods since she was a teenager and described "some difficulty with irritability and sudden anger" as well as anxiety and an occasional lack of appetite and motivation. (R. at 226). Plaintiff also stated "that over the past eight months she has lost over ten friends and family members and believes that these [losses] exacerbate her mood problems." Id.

45. Results of Dr. Ippolito's mental status examination were normal except that Plaintiff was found to have "some difficulty with math skills." (R. at 227). Plaintiff reported she is able to drive or use public transportation and is independent in daily activities including housework, childcare, cooking, shopping, making floral arrangements, and serving as her daughter's Girl Scouts troop leader. (R. at 227-28).

46. Dr. Ippolito's medical source statement reads:

> [Plaintiff] presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others, with no evidence of limitations. She can appropriately deal with stress with mild to moderate limitations. *These limitations are due to her current emotional distress.*

(R. at 228) (emphasis added).

47. The ALJ gave Dr. Ippolito's opinion significant weight. (R. at 15-16).

48. Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence because the ALJ "exclude[d] the stress limitations that Dr. Ippolito

12

gave for no reason at all. (Docket No. 9 at 23). However, this claim ignores the fact that Dr. Ippolito indicated that any stress-related limitations were transitory ("due to her current emotional distress." (R. at 228). Plaintiff also ignores that portion of Dr. Ippolito's opinion that states that Plaintiff's psychiatric problems "do[] not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis" and that portion that deems Plaintiff's prognosis to be "good given reported stabilization with current medications." (R. at 228).

49. "Opinions of temporary limitations have little bearing on a plaintiff's long-term functioning." Moody v. Comm'r of SSA, 2015 U.S. Dist. LEXIS 152256, *14-15, 2015 WL 6948578 (D. Or. 2015) (citing Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008)); see also Romo v. Berryhill, 2018 U.S. Dist. LEXIS 133497, *26, 2018 WL 3751981 (W.D. Wash. August 8, 2018) ("an ALJ may reject opinions of temporary limitations because they have little bearing on a claimant's long-term functioning.").

50. An ALJ is not obligated to incorporate temporary limitations in the RFC determination. See generally Barnhart v. Walton, 535 U.S. 212, 219-20, 122 S. Ct. 1265, 1270, 152 L. Ed. 2d 330, 339-40 (2002) (a claimant's functional limitations must meet the 12-month durational requirement in order to establish disability); see also Hopkins v. Barnhart, 2003 U.S. Dist. LEXIS 19391, *77-78, (D. Minn. August 11, 2003) (affirming denial of benefits where long-term treating physician "only opined that the Plaintiff had temporary limitations in his ability to work, and the Plaintiff has pointed to no evidence to suggest that the RFC, which was determined by the ALJ, was inconsistent with that opinion."); Sandoval v. Comm'r of Soc. Sec., 2018 U.S. Dist. LEXIS 42144, *15, 2018 WL

1322157 (E.D. Cal. March 13, 2018) ("the ALJ did not err by failing to discuss any temporary limitations that were included in the [treating physician's] records.").

51.     This Court finds the ALJ's assessment of Dr. Ippolito's opinion to be proper and that it was reasonable for the ALJ to rely both on the available medical evidence and the lack of evidence when determining Plaintiff's ability to perform sedentary work.  For the foregoing reasons, this Court finds that substantial evidence supports the ALJ's determination, which is devoid of legal error.  Therefore, remand is not warranted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:     October 1, 2019
           Buffalo, New York


                                                    s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge